## REED v. ROOT.

1. **Contract**: MISTAKE: EQUITABLE RELIEF. If, after making an agreement, in the process of reducing such agreement to a written form, the writing, by means of a mistake of the law, or rather a mistake as to the legal effect of the language used, fails to express the contract which the parties actually entered into, equity will interfere to reform it or prevent its enforcement, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact, following *Nowlin v. Pyne*, 47 Iowa, 293; and *Stafford v. Fetters*, 55 Iowa, 484; and distinguishing *Moorman v. Collier*, 32 Iowa, 138; *Glenn v. Statler*, 42 Iowa, 107, and *Gerald v. Elley*, 45 Iowa, 322.

2. ————: ————: ————: RULE APPLIED. In this case plaintiff leased certain buildings to defendant with the mutual understanding that, in case the buildings were destroyed, defendant should be released from further liability for rent, and they were advised that the language used in the written lease properly expressed their agreement, which, as a matter of law, it did not. The buildings were destroyed by a tornado, and plaintiff's assignee sued for the rent accruing after such destruction: *Held* that the written lease did not express the contract of the parties and that plaintiff could not recover.

*Appeal from Des Moines District Court.*

THURSDAY, SEPTEMBER 21.

ACTION on a written lease to recover amount claimed to be due. One Ronaldson, was the lessor, and he assigned the lease to the plaintiff.

The defendant pleaded an equitable defense and alleged the agreement was, in case the buildings were destroyed, the lease should terminate and he be released from the payment of rent, and that, in reducing the contract to writing, such provision was by mistake omitted, and he asked that it be reformed so as to express the true contract. Trial to the court, judgment for the plaintiff, and defendant appeals.

*John C. Power*, for appellant.

*Kelley & Cooper* and *Overton & Marble*, for appellee.

SEEVERS, CH. J.—The lease was executed in April, 1874, and was for the period of three years. It will be conceded the defendant agreed to pay a named sum per annum for the use of the premises. The buildings leased were destroyed by a tornado before the expiration of the lease.

The evidence, without contradiction, shows, that "in case the premises were destroyed by fire or otherwise, the lease should be terminated and Root released from payment of rent." After the lease was written, but before it was executed, the lessor and lessee asked a party as to the meaning of the lease as written, and the defendant desired to know whether the language employed would release him from the payment of rent if the buildings were destroyed. The opinion was expressed by the party asked that such would be the case, whereupon the lessor said "it was his express understanding that the term 'unavoidable accident' covered all loss by fire or otherwise, and such accident would terminate the lease." The defendant replied, if that was "his understanding and agreement he was satisfied." Such being the uncontradicted evidence, the court must have found as a matter of law that the lease, under the circumstances above stated, could not be reformed, and the single question to be determined is whether the court erred.

There is no doubt as to what the contract in fact was, and it is equally clear the writing does not express such contract. The former preceded the latter. The writing, therefore, is merely evidence of what the contract was. The rule undoubtedly is where the parties, in the absence of fraud, mistake, or other equitable circumstances, have made an agreement and the writing expresses such agreement as it was understood and designed to be made, that parol evidence cannot be introduced for the purpose of varying the contract as expressed in the writing. "But if, after making an agreement, in the process of reducing such agreement to a written form, the writing, by means of a mistake of the law, fails to express the contract which the parties actually entered into, equity

will interfere to reform it or prevent its enforcement, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made, but the mistake of the law prevents the real contract from being embodied in the written instrument." Pomeroy on Contracts, § § 234, 237 and authorities cited in notes. *Nowlin v. Pyne*, 47 Iowa, 293; *Stafford v. Fetters*, 55 Id., 484.

The action in *Moorman & Green v. Collier et al.*, 32 Iowa, 138, was at law and no equitable defense was pleaded. In *Glenn & Pryce v. Statler*, 42 Iowa, 107, the bond was the contract, or if this be not so, there was a conflict in the evidence as to the character of the bond that was to be prepared and executed, and in *Gerald v. Elley*, 45 Iowa, 322, there was no contract that the incumbrances should be exempted from the operations of the deed.

For the reasons thus briefly stated the cases cited are distinguishable from the one before the court. Upon equitable principles it would seem that no contract to which the parties did not understandingly assent should be enforced.

It is true, in the case before the court, the parties did assent to and execute the lease, but it does not express the contract actually made. This occurred because of a mistake in relation to the meaning the law attaches to the words embodied in the writing. The legal import of the contract in fact entered into was understood. In this respect there was no mistake. Had there been, this would have been a mistake of law which equity cannot relieve. The mistake was in knowing the meaning which the law attaches to the words employed. To our minds this can hardly be said to be a mistake of law, because the parties failed to use the words intended. It is their intention upon which the rule that relief can be had in equity is based. Now in the case before us the parties never intended to enter into the contract set forth in the writing. The mistake was one of fact in failing to use apt words to ex-

press their intent. The apparent conflict in the adjudicated cases is largely caused by the difficulty in ascertaining from the evidence what was the real intent. That is, whether the import of the contract had been reduced to writing. This it is the province of equity to ascertain. In the case before the court we do not think the lease expresses the intention and contract of the parties. It therefore follows that the court erred in refusing to grant the relief asked of the defendant.

REVERSED.