MARSHALL & SHARP V. O. D. WESTROPE, Appellant.

**Reformation.**   In the course of negotiations for the purchase of certain machinery, *which were not then complete*, defendant offered plaintiff to assign and guaranty certain accounts held by defendant for stallion service.   All parties understood that the persons against whom said accounts were held, were not to pay them, unless the mares served for them proved with foal.   Later on, defendant directed plaintiff to ship the machinery, and sent an assignment of accounts, together with a paper made in duplicate, which provided that plaintiff should take the accounts in full satisfaction of the machinery, and in which defendant undertook "that all *foals* not paid for, * * * he will pay such accounts remaining unpaid."   He requested plaintiff to sign the papers, to keep one and send him the other, and they did both, and shipped the machinery.   Most of the accounts were not collected, because of failure to get colts, and defendant refusing to make good this shortage, an action at law was begun, charging that plaintiff's signature had been obtained by fraud, and a breach of an implied warranty that said accounts were subsisting and enforceable.   In course of the action an equitable petition was filed, asking the writing to be reformed, because the word "foals" had been put into the writing, in place of the word "accounts," either by mutual mistake, or mistake on their, and fraud on part of defendant. The latter denied that he forwarded the paper with intent to induce plaintiff to believe that it was in accord with said first negotiations.   *Held:*

a.   While all parties contemplated, during the first negotiation, that defendant would make good all accounts not paid, without reference to why they were not paid, the written contract, made later, cannot be reformed to express said negotiations, because it never got beyond negotiation, and never ripened into a mutual agreement.

b.   The contract forwarded for signature was not a following

up of said negotiations, but a new proposition, which plaintiff was at liberty to accept or reject.

c. While a writing will be reformed to express the real agreement, where, by reason of mutual mistake of law, fact or both, or such mistake on part of one and fraud on part of the other, the actual agreement arrived at is so written as not to express that agreement, there can be no reformation here, because, *first*, the only agreement was the one signed by the parties, and if that fails to express the intention of all parties, there never was a contract entered into, and, hence, nothing to reform or reform to. *Second*, the proof does not establish any fraud to have been committed by defendant. *Third*, it is not a case of mutual agreement, that defendant should stand good for all accounts, and in writing it out, using "foals" in place of "accounts," owing to a mistaken belief that one was as broad as the other—in which case equity would relieve—but, at best, a case in which it was agreed that defendant should make good all unpaid accounts for foals which were gotten, because the parties mistakenly believed that the true construction of such an agreement as they desired to and did make, would make defendant responsible for unpaid accounts, whether foals were gotten or not   *Fourth*, equity will relieve where mistake induces the use of words which do not state the real agreement, but it cannot interfere because one misunderstood the legal effect of a contract which he knew he was making, and as to which effect both parties had equal means of knowledge.

d. Aside from the fact that no fraud appears, plaintiff can have no relief, because of his own negligence, in a case where he signs a writing sent him for signature, having the same means of ascertaining its legal effect that the sender has.

**Appeal.** In the absence of an assignment of error, a ruling of the trial court sustaining a demurrer in an equitable action, cannot be reviewed on appeal.

*Appeal from Shelby District Court.*—HON. A. B. THORNELL, Judge.

## MONDAY, MAY 18, 1896.

SUIT in equity to reform a contract of assignment of certain accounts made by defendant to plaintiffs, and to recover on the contract so reformed the sum of two hundred and seventy dollars, being the value of certain machinery delivered by plaintiffs to defendant in consideration of the assignment. The defendant admitted the receipt of the machinery, the

assignment of the accounts, and a certain modification of the contract of assignment, but denied each and every other claim of plaintiffs. He also pleaded an election of remedies on the part of plaintiffs, by which they confirmed and elected to stand on the original contract as made. There was a trial to the court, and judgment and decree for plaintiffs. Defendant appeals.—*Reversed.*

*Smith & Cullison* for appellant.

*Nash, Phelps & Mosier* for appellees.

DEEMER, J.—In the year 1891, plaintiffs, a co-partnership, were engaged in selling farm machinery at the town of Audubon. Defendant had for a number of years prior thereto, been managing and conducting a farm in Audubon county for his father. On or about March 1, he moved onto a farm of his own, in Shelby county, intending to cultivate it for his own use and benefit. Desirous of purchasing some farm implements, he visited plaintiffs' place of business, with the avowed intention of securing the same. It appears that the defendant was the owner of a stallion, which was "stood" for the season of 1890, in Montgomery or Cass counties, by an agent of defendant, under an arrangement by which the parties who received the services of the stallion were to pay a certain amount therefor in the event the mares bred to him were got with foal; otherwise, nothing should be paid. The defendant was the owner of certain claims for services resulting from the use of the stallion, which he proposed to transfer to plaintiffs for the farm machinery he desired to purchase. No agreement was reached at the first interview, but it was arranged that defendant should see if he could purchase the machinery of some other person at a lower price, and, if not, it was

supposed that the negotiations would be renewed. About March 27, the defendant wrote plaintiffs a letter of which the following is a copy: "Marshall & Sharp: I can make the trade in Harlan, but they are not so low in price as you are. Jones would not make the price he stated and furnish the goods he named. Inclosed find assignment for same. Please sign and date, and keep one, and send me one, and let me know by return mail, because I will want to know at once if the deal is closed. I would come over, but my house burned to the ground last Saturday night, and I cannot leave. Very truly, O. D. Westrope." In this letter was inclosed a contract for the plaintiffs' signature, the material parts of which are as follows: After stating that plaintiffs had sold certain machinery to defendant, it recites: "That, as payment therefor, the said O. D. Westrope enters into and does hereby assign and transfer to said Marshall & Sharp the following accounts for services of the stallion named General Duke, in the year 1890, to-wit: [Here follows a list of the accounts, with the amounts of each set out, aggregating the sum of three hundred dollars. The said Marshall & Sharp taking and accepting said accounts in full satisfaction of said claim; the said O. D. Westrope hereby agreeing that all foals not paid for by July 1, 1891, that he will pay to said Marshall & Sharp such account remaining unpaid, and said account so paid by him to be reassigned to him. Marshall & Sharp. O. D. Westrope. Dated at Audubon, Ia., March 28, 1891." These contracts were signed by appellees as indicated, and one of them (there being two) was returned to appellant, and the other retained by appellees. Afterwards one of the articles called for by the contract was substituted by another, and all the goods, with the substitute named, were shipped to the appellant. But three of the mares served to appellants' horse proved to be with foal, and appellees

received but thirty dollars from the accounts so assigned. The other accounts never matured, because the mares did not prove to be with foal. The appellant, being called upon to make payment of the balance of the purchase price, refused, claiming that he had fully performed his contract. The appellees thereupon instituted an action at law against the appellant, alleging (1) that appellant had procured its signature to the contract by fraud and misrepresentation; (2) that there was an implied warranty in the sale of the accounts, to the effect that they were subsisting and enforceable against the parties whose accounts they purported to be; and (3) that appellant received the property without any consideration therefor having been paid by him. The appellant made an issue of fact on the first claim, and demurred to the second and third. The demurrer was sustained as to the third, and overruled as to the second. Defendant thereupon answered the second, pleading that, under the arrangements had with those who secured the services of his stallion, it was agreed that nothing should be paid unless the mares were got with foal; that plaintiffs knew of this arrangement when they accepted the assignment of the accounts. Thereupon plaintiffs amended their petition by adding another count, in which they claimed that, by mutual mistake, or by mistake on their part and fraud on defendant's, the words "foals" was inserted in that part of the contract containing the guaranty, instead of the word "accounts"; and they asked that the mistake be corrected, and the contract reformed. A motion was then filed by defendant, attacking the petition on the ground of misjoinder. This motion was sustained, but plaintiffs were permitted to file this last count as an independent action in equity. Certain pleadings were filed attacking this equitable pleading,

which need not be referred to, and finally the defendant answered, admitting the receipt of the goods, as alleged, but denying the fraud and mistake. He also pleaded that plaintiffs, by the institution of the law action, had confirmed the contract, and elected to stand thereon, and that they could not now be allowed to repudiate it; and that the contract was merged in a judgment, by which the rights of the parties were fully determined. Defendant also pleaded that plaintiffs, with full knowledge of the contents of the written contract, and that the word "foals" was used therein, confirmed the same, and elected to stand by the conditions thereof. The plaintiffs filed a reply, denying this last claim of defendant, and also filed a demurrer to that part of the answer, pleading an election and confirmation. This demurrer was submitted with the case, and the court, in rendering the decree, sustained the demurrer, reformed the contract as prayed, and rendered judgment for plaintiffs. Defendant excepted to the rulings, and appeals.

I. The first point relied upon by appellant is that the court erred in sustaining the demurrer to that part of his answer pleading election and confirmation. It is said that plaintiffs, by reason of having commenced their suit at law, elected to rely upon the contract, and that they cannot now be allowed to change front, and seek to have it reformed. The question presented is not open for our consideration. The suit is an equitable one, triable *de novo* in this court, upon the issues of fact presented to the lower court; and, while the appellant might also have the case considered on error, yet, to do so, he must assign the errors of which he complains. *Powers v. O'Brien Co.*, 54 Iowa, 501 (6 N. W. Rep. 720); *Patterson v. Jack*, 59 Iowa, 632 (13 N. W. Rep. 724); *Hodgin v. Toler*, 70 Iowa, 21 (30 N. W. Rep. 1). There is no assignment of errors, and we cannot, therefore, review the action of

the trial court in sustaining appellees' demurrer. It may not be inappropriate to say, however, that we do not think the facts as pleaded in defendant's answer constitute such an election of remedies, or such a claim of right, as prevents the appellees from asking for a reformation of the contract upon which the suit is founded.

II. The appellees alleged in their petition that the contract of sale "did not express the real contract entered into between plaintiff and defendant, * * * in that the word 'foals' was, by fraud or mistake of the defendant, used in the place of the word 'accounts,' * * * but that plaintiff, through mistake as to the contents of said instrument, believed that the word 'accounts' was used in the said instrument, where the word 'foals' is found, and was thereby induced to sign the said instrument." In an amendment to the petition, the appellees said "that either said instrument did not express the intention and real contract of the parties signing the same, by reason of the mistake of both parties, or of the scrivener drawing the same, or that the defendant fraudulently presented the same to plaintiffs, intending that plaintiffs should be misled thereby, and knowing that plaintiffs were in error as to the terms, and to its sufficiency to express the contract between them." It is now insisted that the evidence does not sustain either claim. It seems to us that this is true, in so far as it relates to the alleged mistake of fact recited in the original petition. The evidence conclusively shows that both members of plaintiffs' firm knew when they signed the contract, just what it contained. They knew that the word "foals" was used, instead of the word "accounts." They talked about the contract with each other before signing it. The defendant says that there was no mistake; that the language used was just as he intended. Manifestly,

there was no such mistake of fact as to justify a reformation of the instrument, for the plain reason that neither party was mistaken in regard to what was in fact in the contract. A mistake, to be such as the law will relieve from, must be mutual and reciprocal. When the contract as executed is just as the parties intended to make it, the court has no power to reform it because of mistake of fact. To do so would be making a new contract for the parties, and would also impose upon one burdens which he did not intend to assume. No court has the power to make a new contract for the parties. It can only do what the parties mutually and manifestly intended at the time they signed the same. The mistake made, if any, was with reference to the efficacy of the terms used to carry out the intent of the parties, and this is the real claim made by the appellees. We have, then, the question: Will a court of equity reform a contract under such circumstances? In the case of *Lee v. Percival*, 85 Iowa, 639 (52 N. W. Rep. 543), we held, following the rule laid down by Prof. Pomeroy in his work on Equity Jurisprudence, that "if, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation or reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument." The counterpart of this proposition announced by Prof. Pomeroy is: "The doctrine is settled that, in general, a mistake of law, pure and simple, is not

adequate ground for relief." Section 842. "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief. * * * The principle underlying this rule is that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might or even would have had if they had been more correctly informed as to the law,—if they had not been mistaken as to the legal scope and effect of their transaction." Section 843. "If an agreement is what it was intended to be, equity will not interfere with it because the parties have mistaken its legal import and effect." Section 845. We now have the two rules stated as concisely as general principles may be, and it is next important to determine under which of them this case falls. We have seen that if the parties, at the time they made their agreement,—at the time their minds met,—mutually understood that the defendant was to guaranty all the accounts which he transferred to plaintiffs, but that, in the process of reducing their agreement to writing, they used the word "foals" under the mistaken idea that it was as broad as the word "accounts" then equity will afford relief. But if they made an agreement that defendant should guaranty the foals, under the mistaken idea that this would be a guaranty of the accounts, then no relief can be granted. It is also a well-settled and oft-repeated rule of law that, before mistakes of either fact or law can be relieved from either affirmatively or negatively, it is essential that the proofs be clear, strong, convincing, and free from reasonable doubt. *Gelpcke v. Blake*, 15 Iowa, 387; *Clute v. Frazier*, 58 Iowa, 268 (12 N. W. Rep. 327). There is another rule which it may be well to note, as

it is relied upon by the appellees in this case. It is as follows: "A mistake which will warrant a court of equity in reforming a written contract must be a mistake made by both parties to the agreement, or it must be the mistake of one party by which his intentions have failed of correct expression, and there must be fraud in the other party in taking advantage of the mistake, and obtaining a contract with the knowledge that the one dealing with him is in error as to what are its terms." *Bryce v. Insurance Co.*, 55 N. Y. 243; *Winans v. Huyck*, 71 Iowa, 459 (32 N. W. Rep. 422). Another principle which is suggested by appellant, may also be stated. It is to the effect that a mistake caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, will not be relieved from by a court of equity.

Turning now to the evidence, we find that it establishes the following facts: The defendant, desirous of purchasing some farm machinery, visited the plaintiffs, and received from them their lowest and best price therefor. He then offered to exchange some accounts in payment, or as collateral security for the purchase price. The plaintiffs would not accept these accounts without a guaranty from the defendant, and they so told him. Defendant then said he would be responsible, and pay all accounts that were not paid and turned over to plaintiffs by July 1. The plaintiffs then said they would accept the proposition. All parties understood at the time the condition of the accounts,—that the parties against whom they purported to be, were not to be responsible unless the mares proved to be with foal. The defendant wished to do a little more figuring, and said that he was going over to his farm, and would look the matter up a little further, and would

write what he concluded to do about the matter. It was further agreed that, if the trade was consummated, the goods should be shipped to defendant over the Rock Island railroad. The next plaintiffs heard from defendant was by letter of date March 27, 1891, a copy of which we have already given. When plaintiffs signed the contract which was inclosed in defendant's letter, they understood they were carrying out the arrangements previously made. Some time in September of the year 1891, the plaintiffs ascertained they were not going to receive more than thirty dollars from the accounts which were assigned them, and they called on defendant for payment. Defendant put them off from time to time, and finally announced that he intended to stand upon his contract. When plaintiffs signed the contract, they knew the words it contained, and their mistake, which we are abundantly satisfied they made, was as to the legal effect thereof. We feel quite certain that the defendant, when he first talked to the plaintiffs, intended to guaranty all the assigned accounts, and not those only which fully matured. It is not so clear, however, that he, in drafting the contract, intended, by the words used, to make himself responsible for the accounts without reference to the foals.

Now, in applying the law to these facts, the first inquiry is, what was the contract as actually entered into by the parties? for it must be remembered that this is not a suit to cancel or set the writing aside, but to make it conform to the real agreement of the parties. If, then, the instrument itself is the contract the parties in fact made, then there is nothing to reform. But if they made a parol contract,—if there was in fact a meeting of the minds of the parties,—and they made a mutual mistake in reducing it to writing, and used terms which did not

express the real contract between them, equity will reform the instrument to make it correspond with the contract as actually made. It is apparent from what we have said, as well as from some other circumstances in this case which we cannot take the space to state, that, while the parties were making propositions and negotiations with each other for a trade, their minds never in fact met until the plaintiffs signed the written instrument which was sent for their signature. This was the contract between the parties; and although it did not, for lack of apt words, express what they thought it did, this was the only agreement they made.

It is well to inquire, what other contract did they, in fact, make, which should be given force and vitality? The answer is, none. The whole matter, as it stood at the end of the personal interview between the parties, was in the form of propositions by one to the other. The acceptance by the defendant was not of the offer made him by the plaintiffs. He, in truth, sent another proposition when he mailed the contracts signed by himself. These contracts were not in accord with the previous negotiations of the parties; but the plaintiffs, when they signed them, knew full well what they contained, and, if any agreement was made, it was the one expressed in the writing. It may be that, because of a mistake of law, the minds of the parties never met. But, if this be conceded, it will not aid the plaintiffs; for they are insisting upon the performance of a contract which they say they did make. They are not suing to avoid an instrument because they never agreed to it. Moreover, if they were asking cancellation, or rescission, their own negligence in signing the contract, would seem to be a bar to relief of this kind.

There is no evidence of fraud of any kind on the part of the defendant. He forwarded such an agreement

as he proposed to make with the plaintiffs, and they, without any kind of imposition, misrepresentation, concealment, or other inequitable conduct on defendant's part, signed the instrument with full knowledge of what it contained. The most that can be claimed from the evidence is that the defendant forwarded the instrument with the intent to induce plaintiffs to believe that it was in accord with the previous negotiations, but this is a mere inference, which is squarely denied by the defendant. The presumptions are with the defendant, and the rule is well settled that fraud will not be presumed, but must be proved by him who alleges it.

An insuperable objection to relief on the ground of fraud, is the negligence of the plaintiffs in signing the instrument. They had the same means of knowledge as to the legal effect of the words used, as the defendant; and, if they were mistaken as to the proper legal construction thereof, it was not due, so far as we can learn from the record, to any fault of the defendant. The case, then, is one of mistake of law, pure and simple, and a court of equity cannot reform it. If we should attempt to do so, we would make a new contract for the parties, and impose upon one of them burdens to which he has never assented. While it may seem like a hardship to say that plaintiffs shall not recover for the machinery delivered defendant, yet the case is one of mistake of law, in which some person must suffer; "and the law wisely, though sometimes with great apparent hardship, leaves it for him to suffer who committed the mistake."

These conclusions are supported by the following, among other authorities: *Reed v. Root*, 59 Iowa, 359 (13 N. W. Rep. 323); *Moorman v. Collier*, 32 Iowa, 138; *Stafford v. Fetters*, 55 Iowa, 484 (8 N. W. Rep. 322); *Baker v. Massey*, 50 Iowa, 399; *Nowlin v. Pyne*, 47

Iowa, 293; *Hallam v. Corlett*, 71 Iowa, 446 (32 N. W. Rep. 449). See, also, the cases cited in the first part of this opinion.

It follows, from what we have said, that the judgment must be REVERSED.