## H. H. LANTZ v. J. J. RYMAN, *et al.*, Appellants.

**Contract:** DISSOLUTION OF INSURANCE AGENCY. An agreement between persons in the business of a fire insurance agency by which one of them sells his interest in the agency to the others, agreeing not to apply for nor accept specified companies, with the distinct understanding that he does not sell his good will in any "of the business or renewals now on the books of the agency, but reserves the full right and privilege of soliciting, securing, and writing any of the same," entitles such member to issue policies in place of those expiring as well as those in renewal of policies.

**Evidence:** PAROL VARIANCE. It appeared that the firm kept an expiration register, and that the terms "renewals" and "expirations" were used by insurance men interchangeably. *Held,* that parol evidence of contemporaneous conversations between the parties or subsequent statements by plaintiff, were not admissible to prove that he sold to defendants his interest in the expirations.

PAROL VARIANCE. Plain and unambiguous language in a written contract cannot be varied by evidence of declarations of one of the parties, made after the execution of the contract.

FALSE REPRESENTATIONS. A representation by a retiring member of a firm of insurance agents that he has no copy of the expiration list of policies, even though false, is immaterial where the dissolution agreement reserved to him his good will in the business and the right to solicit and secure renewals of policies.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

FRIDAY, MAY 21, 1897.

ACTION to recover an amount alleged to be due on an agreement in writing. The defendants pleaded a failure of consideration, fraud on the part of the plaintiff in obtaining the agreement, and mistake in consequence of which the agreement actually made was

not incorporated in the writing signed. They asked that the writing be reformed. There was a hearing on the merits, and a judgment in favor of the plaintiff. The defendants appeal.—*Affirmed.*

*George R. Sanderson* and *McVey & McVey* for appellants.

*Gatch, Connor & Weaver* for appellee.

ROBINSON, J.—In the first part of the year 1889, the plaintiff purchased an interest in the business of Ingersoll, Howell & Co., and became a partner of the firm. Changes subsequently occurred, and for some time prior to the signing of the instrument in suit the firm had been composed of the plaintiff, Adam Howell, and the defendants, J. J. Ryman and H. R. Howell, who transacted business in the firm name of Ryman, Lantz & Howell. The business was that of a local fire insurance agency in the city of Des Moines, and the firm represented several different companies. The defendants and Adam Howell finally became dissatisfied with the plaintiff, and attempts were made to effect an agreement by which the partnership relation should be severed. After somewhat lengthy negotiations, the writing in suit was signed. The following is a copy of it: "April 25, 1894. Memorandum of Agreement Made This Day. H. H. Lantz hereby agrees to sell to J. J. Ryman and H. R. Howell his interest in the agency heretofore known as Ryman, Lantz & Howell; agreeing, in the transfer of companies in the organization of the new agencies, not to apply for nor to accept the following companies, namely: London & Liverpool & Globe Insurance Co. of North America, Phœnix, Springfield, Niagara, Atlas, German-American, Commercial Union, London Assurance, Hawkeye, and American of Pa.; and in

consideration therefor the said J. J. Ryman and H. R. Howell hereby agree to pay therefor the sum of $1,200, and assign and agree not to take the Franklin, American of New York, St. Paul & Western, and to also use their influence in securing the transfer of the Pennsylvania Fire to Lantz, but not to be barred from taking the Pennsylvania Fire if they refuse to go to said H. H. Lantz. It being distinctly understood and agreed, that the said H. H. Lantz does not sell his good will in any of the business or renewals now on the books of the agency, but reserves the full right and privilege of soliciting, securing, and writing any of the same. After the payment of the debts of the old firm, the remainder of its funds shall be distributed according to the co-partnership agreement, which shall be in addition to the $1,200 above stated. This agreement to take effect May 1, 1894. [Signed] H. H. Lantz. J. J. Ryman. H. R. Howell." The payment for which this writing provides has not been made, and the plaintiff seeks by this action to recover it. The answer of the defendants states that the firm of Ryman, Lantz & Howell had no proprietary interest in the agency of the several insurance companies which it represented, and that the plaintiff could not sell or transfer any interest therein to the defendants; that the sole assets of the firm consisted of a small balance of profits after the debts should be paid, and in the renewal list owned and kept by the firm; that the business of the firm was considerable, and several hundred patrons were listed on its books; that it kept an expiration register, showing the name of each person assured, the date upon which his policy and insurance would expire, and the amount of the insurance carried; that by the expiration list the members of the firm were enabled to know when and to whom to go for the renewal of insurance, and that the list was valuable; that the only thing the plaintiff sold to the

defendants by the agreement in question, was his interest in the expiration list. The answer further alleges that the agreement was without consideration and procured by fraud, and is void, in that at the time it was entered into, and before and after that time, the plaintiff represented to the defendants that he had not kept a copy of the expiration list, and had no copy whatever, and would not take a copy of it, but that he would sell and deliver the list to the defendants, but that the truth was that he had secretly, and without knowledge of either of the defendants, taken and copied the expiration list, and had a complete transcript of it, which he kept, and from which, immediately after the dissolution of the firm, he solicited the renewal of insurance. The answer further states that just before the agreement was signed the defendants stated to the plaintiff that they understood by the terms and conditions of the agreement that they were buying the plaintiff's interest in the expirations; that the agreement seemed to be somewhat ambiguous upon that point, but that the expiration list was substantially all there was to buy,—and that the plaintiff replied that he was selling to them his interest in the list, and that he understood the contract as these defendants stated it; that the defendants relied upon these statements of the plaintiff, and upon his representation that he did not have a copy of the list, nor any part of it, and that he only retained the right to conduct an insurance agency in Des Moines, and, so relying, signed the agreement. In an amendment to their answer the defendants set out what they claim to have been the real agreement of the parties, and ask to have the one actually signed reformed. The district court rendered judgment in favor of the plaintiff for the sum of one thousand two hundred dollars, with interest thereon at six per cent. per annum from the first day of May, 1894, and costs.

There is much conflict in the evidence respecting what was said between the parties to the agreement at the time it was signed, and at an interview had a few days later, before it was to take effect. If the testimony in regard to what was said on those occasions was to be considered alone, we should be forced to conclude that the defendants' claims as to the facts are sustained. But the plaintiff denies in the most positive terms much of what the defendants and others for them, testified to; and we must consider, not only what is claimed to have been said by the parties, but the writing itself, which is of controlling importance, and relevant circumstances which existed at the time. When the plaintiff became a member of the firm of Ingersoll, Howell & Co., he paid the sum of two thousand four hundred dollars for the interest he acquired; and during his connection with the business it had increased in value, and his interest was worth more at the time of the transaction in controversy than that which he originally purchased. During the negotiations which preceded the making of the agreement in controversy, two propositions were made, by one of which the plaintiff was to receive from the defendants two thousand four hundred dollars, retire from the firm, and not engage in the insurance business for a term of years. By the other proposition, he was to receive one thousand two hundred dollars, and retain the privilege of doing an insurance business on his own account. Finally, Ryman drew a proposition in the form of an agreement, which, with the exception of one or two provisions, was substantially the same as the one which was signed. Some changes were made in it, but the plaintiff refused to sign it, and took it from the office of the firm where it was drawn, to his attorney. There it was changed to read as it did when it was signed, and he returned with it to the defendants. The paragraph which reads as

follows: "It being distinctly understood and agreed that the said H. H. Lantz does not sell his good will in any of the business or renewals now on the books of the agency, but reserves the full right and privilege of soliciting, securing. and writing any of the same,"— was inserted in the attorney's office, and was read and fully considered by the defendants before the agreement was signed. They knew just what they were signing, and it must be presumed that they were possessed at least of ordinary intelligence, and that they knew what the paragraph last quoted meant. It was clear and explicit, in language which men familiar with insurance business could not have misunderstood. Some attempt is made to show that "renewals" are not the same as "expirations," but the testimony of disinterested insurance men shows clearly that the terms are used interchangeably, and mean substantially the same thing, when used in the insurance business. But, if this were not so, the language of the paragraph is sufficiently broad to include expirations; for it reserves to the plaintiff his good will in the business, and the right of "soliciting, securing and writing" "any of the business or renewals" then on the books of the agency. It would be a wide departure from the ordinary rules of practice to permit language so plain and direct as this to be contradicted by proof of contemporaneous verbal statements, and that is what the defendants seek to do by showing that the language used in the writing was to be given a meaning wholly different from that which it ordinarily bears. Nor can the language used be given a different effect by showing declarations of the plaintiff made after the agreement was signed. But it is said that the plaintiff was guilty of fraud, in representing that he did not have a copy of the expiration list when the agreement was signed. We very much doubt that he

represented that he did not have a copy of any portion of that list, for the reason that portions of it were copied into small books from time to time, and some of those had been furnished to him in the ordinary course of business. But his representations, whether they were as claimed by the defendants or not, were immaterial, in view of that part of the agreement which reserved to him his good will in the business, and the right to solicit and secure renewals. The defendants have failed to show, by the kind and weight of evidence required, that the agreement was induced by fraud, or that they were mistaken as to its provisions when they signed it. Our conclusions find support in the following authorities: *Marshall v. Westrope*, 98 Iowa, 324 (67 N. W. Rep. 257), and cases therein cited; *First Presbyterian Church v. Logan*, 77 Iowa, 326 (42 N. W. Rep. 310); *Dirkson v. Knox*, 71 Iowa, 728 (30 N. W. Rep. 49); 1 Greenleaf, Ev., sections 275, 281; 2 Pomery, Eq. Jur., section 859. Nor have they shown that the consideration for the agreement has failed. The defendants not only retained the permanent record of the expirations, and the right to solicit and obtain all the renewals possible, and the agency of certain companies, as provided in the agreement, but they also retained three of the five companies which the plaintiff was to have if he could secure them. It is true, the defendants claim to have rescinded the agreement when they discovered the alleged fraud of the plaintiff, and that they had a right to ignore it, but a rescission which repudiates the obligations of an agreement while retaining its benefits is not looked upon with favor by a court of equity. We are satisfived that the evidence fully sustains the judgment of the district court, and it is AFFIRMED.