Fred H. Becker et al., Appellees, v. Hiram Baker et al.,
Appellants.

**EVIDENCE:** Parol Evidence—Oral and Written ·Leases—Merger. A
1  written lease for a definite time merges an oral lease, entered into
at the same time and as a part of the same transaction, for an
additional year.

**ESTOPPEL:** Equitable Estoppel—Silence. It is only a *misleading*
2  silence that will work an estoppel.

    PRINCIPLE APPLIED: A tenant claimed that, at the time a
written lease for a definite period was signed, and as a part of
the same transaction, an oral lease was made for one year in
addition to the written lease. Near the expiration of the written
lease, he asserted his right under this oral lease, but proposed to
waive it if given a lease for two years at an increased rental for
both years. The owner said that he would consult another
joint owner and would let the tenant know. The owner did not
do so. The tenant wrote several letters to the owners with refer-
ence to the matter. The owners ignored the letters. On this
*silence,* the tenant did fall plowing and built a fence. *Held,*
the owners were not estopped to question the legality of the oral
lease, especially when there was no showing that the owners
knew that the tenant was proposing to or was doing plowing or
building a fence.

*Appeal from Lyon District Court.*—William D. Boies, Judge.

SATURDAY, FEBRUARY 12, 1916.

Action to recover the possession of real estate. Directed
verdict for plaintiffs, and defendants appeal.—*Affirmed.*

*Gerrit Klay* and *E. C. Roach,* for appellants.

*T. M. Zink* and *Simon Fisher,* for appellees.

Deemer, J.—I. Plaintiffs are the children and heirs at
law of Fred Becker, deceased. During his lifetime, and on or
about June 15, 1910, plaintiffs' father leased to defendants,
Hiram Baker and Maggie Baker, by written lease, the prem-

ises in controversy, covering the period from March 1, 1910, to March 1, 1915. Defendants continued to occupy the premises until March 25, 1915, when plaintiffs, their father having died during the term of the lease, brought this action to recover possession of the property. Defendants claimed to be entitled to possession under an oral lease made with the elder Becker at the same time the written lease was executed, extending the time for one year after the term created by the lease had expired, at the rental of $3.40 an acre. They pleaded also that during the year 1914 they informed plaintiffs of the said oral lease and that plaintiffs said they would look into the matter, but they never did so,—or, if they did, they failed to advise defendants as to their conclusion on the matter,— and that defendants, relying upon the said oral lease with the plaintiffs' father, did some fall plowing and incurred some other expense, on the strength of the supposition that, as plaintiffs made no objection to their claims of an oral lease, they recognized the same, and are now estopped from saying that their oral contract for the land is of no validity.

II. As the original written lease expressly fixes the term, and as the oral lease under which the defendants claim is admitted to have been made at the same time and as a part of the negotiations leading to the written one,

1. EVIDENCE: parol evidence: oral and written leases: merger.

and as the oral lease contradicts and varies the terms of the written one, it is manifest that, without reference to the statute of frauds, which plaintiffs insist is also applicable, the oral lease was merged in the written one and cannot be proved by parol. *Kelly v. Chicago, M. & St. P. R. Co.,* 93 Iowa 436; *Iowa Business Men's B. & L. Association v. Fitch,* 142 Iowa 329, 332; *Marshall & Sharp v. Westrope,* 98 Iowa 324; *Billmeyer v. Queen Mfg. Co.,* 150 Iowa 318, 321; *McEnery v. McEnery,* 110 Iowa 718, 724; *Blair v. Buttolph,* 72 Iowa 31.

III. The plea of estoppel is based upon testimony to the effect that plaintiffs were notified of defendants' claim before

the expiration of the written lease, did not dispute it, but allowed defendants to expend time and money on the strength of the oral lease and did nothing until the expiration of the written contract. The only testimony in support of the claim is as follows:

2. ESTOPPEL: equitable estoppel: silence.

"The last time I saw Clarence G. Becker was a year ago this spring in June. I had a talk with him at that time, this was in the spring, I presume it was in April, 1914. I asked him if he wasn't willing to make a settlement and I told him that he knew very well that I had a year coming to me at $3.40 an acre and I wanted to get the thing settled and I made a proposition that in case he would make it two years instead of the one year that I had rightly coming I was willing to give $5 per acre for two years instead of $3.40 for one year, that I had coming, and he said that he would see his brother and let me know and that was the last that I heard from either one of them. In the fall of 1914, right after I sent the letter Aug. 22, 1914, and I didn't get any answer I plowed between 45 and 50 acres on the farm and got through about October. In the fall of 1914 I built fence. I did not receive any notice oral or written from the plaintiffs to quit these premises until the 20th day of March, 1915."

The witness testified also that he turned the matter over to his attorney some time in the summer of the year 1914, and that this attorney wrote the following letters:

"August 22, 1914.

"Fred Becker, LeMars, Iowa.

"Dear Sir: I write you at the request of Hiram Baker. I wrote you last January, 2nd, when I sent you statement of Mr. Baker's claim against you for hauling posts and fixing fence, and the expense of the well, which Mr. Willis has put in which he claims you were to furnish him with. Last spring this well needed to be dug deeper and a point on it. He hired Willis to do this work, and did some work himself. The cost

of this was $25.60 in addition to the bills heretofore rendered, and the point for the well was $2.50. Then he said there was a fence that had to be repaired and put in, for which he paid the following amounts: Staples, $2.50; nails, $2.00; lumber for granary and corncrib, $5.00. This makes a total of $487.56 of Mr. Baker's bill against you. The last half of last year's rent which has not been paid on account of this claim was $420, thus leaving on account of last year's transaction due Mr. Baker, as he says, $67.56. Mr. Baker would like to get this settled and adjusted and get his note for last year's rent before the rent due this year is to be paid. He said that his rent for this year which is due October first is ready and will be left at the State Bank of Rock Valley for you if these other matters are settled up. Mr. Baker says that he has the farm leased for another year from March 1, 1915, at $3.40 an acre, which would make his time expire March 1, 1916. He wants to have his lease extend another year from the time it now expires. This is, he wants to keep the farm until March 1, 1917, and proposes that if you will so extend his lease and give him the farm until March 1, 1917, he will pay a rental of $5 per acre per year, for the two years beginning March 1, 1915.

"There seems to be quite a controversy between you and Mr. Baker and it seems to me that you should get together and settle these matters up. Your brother saw Mr. Baker last spring when he was to talk it over with you and he was wondering why he has not heard from you. There was very high water during this year and about 150 rods of fence was washed out, and is in the river and it would be very difficult to get it out, so that he would like to have you come down and see about getting this fence fixed, or let him know what to do about it. As I understand this is the line fence between you and Van Daalen about which Van Daalen has written you. Please let me hear from you.

          "Yours truly,

                   E. C. Roach."

"December 30, 1914.

"Mr. Fred Becker, Sioux City, Iowa.

"Dear Sir: Mr. Hiram Baker is again in my office today, and wants me to write you again about the matter of his rent that is now due. As I understand you notified the elevator company when he sold his corn of your claim for rent. He sold 1,097 bus. of corn and 28 lbs. at 55c per bu., amounting to $603.63. He has left this money at the State Bank of Rock Valley to pay the rent due January 1, 1915, which is $420. He has made a check payable to the Becker estate. He does not know who the administrator of the estate is. Of course before this money is paid over, he expects his rent note. As I understand Mr. Baker his claim is that he has $180 on deposit in the State Bank of Rock Valley more than is necessary to pay the rent he claims to be due. I call your attention to my former letters of September 30, 1914, and August 22, 1914, and January 2, 1914, in which Mr. Baker's claims as offsets against the rent are stated. Mr. Baker still says that he has the right to stay on the place for another year at $3.40 per acre. Mr. Baker would like to make an arrangement to lease the place for two years beginning March 1, 1915, instead of the one year which he claims, and would be willing to pay rental of $5 per acre for each year if he can make the two year lease. I have heretofore written you for Mr. Baker his claim on account of the fences and presume you understand this. As I understand Mr. Baker the money which he has left in the bank is to be paid when you surrender the rent notes; there are three notes as I understand him in your possession and also there are some old notes for the years before his present lease, two of these as I understand and he wants these surrendered.

"I telephoned to Sioux City this morning to try to talk to you for Mr. Baker, but was informed that you had gone to Doon. I have phoned to the hotel and the bank at Doon trying to reach you, but am informed that you are not in Doon. Mr. Baker is now here and will go down to Doon this

evening.  I hope you will see him and get your matters settled up.  As I understand his lease for the farm and the claims that he makes were under arrangement with your father who died.  It seems to me that the administrator should meet Mr. Baker and endeavor to get this whole matter settled up.  I have written you three letters before this, but have received no reply from you.  I suppose you have received the letters, as they bore my return card.

"I hope you may get matters adjusted with Mr. Baker.
"Yours truly,
"E. C. Roach."

"Dec. 30, 1914.
"Mr. Fred Becker, LeMars, Iowa.

"Dear Sir: Mr. Hiram Baker is in the office again today and at his request I write you about the rent which is due tomorrow.  This rent is deposited in the State Bank of Rock Valley, Iowa, to be paid you.  There is also a balance of $66.56 as Mr. Baker claims due him from you on account of the last year's rent, which he will deduct from this rent, and the balance will be paid to you when you send the note which is due now, and the note for the last year's rent.  Mr. Baker does not want to pay this rent until he has these notes and as soon as this is settled you can get the amount of money coming to you and when you send the notes to adjust this matter.  I also wish to say that he wishes to call your attention to the matter of the fence about which I wrote you in my letter of August 22, 1914.  This is a line fence and the pasture cannot be used until the fence is fixed up.  It does seem to me that you and Mr. Baker ought to get together and get these matters settled up.

"Yours very truly,
"E. C. Roach."

It is manifest that this testimony does not amount to an estoppel on the plaintiffs.  Whilst plaintiffs were notified of

defendants' claims, they were also advised that defendants were not going to insist thereon, but were proposing to make another lease at an advanced rental in settlement of the controversy, and that the parties never got together on this settlement. Moreover, there is no showing that plaintiffs had any knowledge of what defendants were proposing to do or that they had done any plowing or expended any money on the strength of their claim to an oral lease. The testimony did not, therefore, call for the submission of this issue to a jury. *Logan v. Davis,* 147 Iowa 441, 452; *Wingert v. City of Tipton,* 134 Iowa 97.

The judgment seems to be correct, and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.