[No. 3278. Decided March 27, 1900.]

THE STATE OF WASHINGTON, *Respondent*, v. E. A. LORENZ
*et al., Appellants.*

APPEAL—REVIEW OF INTERMEDIATE ORDERS—HARMLESS ERROR.

The action of the court in refusing to strike out certain allegations of a complaint as irrelevant and redundant matter is not prejudicial error, when there is no showing that it in any way involved the merits of the controversy, or materially affected the judgment rendered, since, under Bal. Code, § 6520, an intermediate order or determination of the trial court will be reviewed only when it involves the merits of the controversy, or materially affects the judgment, and, under § 6535, the supreme court is required to hear and determine all causes upon the merits, disregarding all technicalities, and to consider all amendments which could have been made as made.

PLEADING—PARTIES—AMENDMENT.

In an action founded upon a deed executed by husband and wife, in which the complaint fails to name the wife as a party or recite any fact excusing the necessity of making her a party, it is not an abuse of discretion for the court upon the trial to permit the plaintiff to so amend his complaint as to show the death of the wife prior to the commencement of the action.

SAME—REFORMATION OF INSTRUMENT—NECESSARY ALLEGATIONS.

In a suit to reform a written instrument a complaint is sufficient which shows the original agreement of the parties, points out where the writing differs from the agreement, and alleges that the difference was caused by the mutual mistake of the parties to the agreement; and the complaint is not rendered defective by not setting out the exact language omitted from the written agreement.

STATUTE OF LIMITATIONS—WHEN BEGINS TO RUN—REFORMATION OF INSTRUMENT—ADVERSE CLAIM.

The bar of the statute of limitations does not begin to run against an action for the reformation of a deed until the assertion of an adverse claim against the party seeking reformation.

REFORMATION OF INSTRUMENT—MISTAKE OF LAW.

The fact that the duty of passing upon the sufficiency of a deed to the state was placed by law upon the attorney general,

19—22 WASH.

and that that officer duly approved the deed, would not constitute such culpable negligence on the part of the officers of the state, or such a mistake of law as equity would not relieve against.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge. Affirmed.

*J. P. Cass* and *H. W. Lueders,* for appellants:

The action is one to have the court reform a contract so as to conform to the original intention of the parties at the time the deed of right of way was delivered by the grantors to the grantee.  To grant this relief it must be shown that both parties mutually intended the deed to contain what is now asked to be supplied, and the exact language asked to be inserted therein must be alleged and clearly proven. Adams, Equity (5th Am. ed.), p. 339 *et seq.; Kleinsorge v. Rohse,* 34 Pac. 874; *Osborn v. Phelps,* 19 Conn. 63 (48 Am. Dec. 133) ; *Parkhurst v. Van Cortland,* 14 Johns. 15 (7 Am. Dec. 427) ; *Page v. Higgins,* 5 L. R. A. 153, and notes; *Hearne v. Marine Ins. Co.,* 20 Wall. 488 (22 Law. ed. 397) ; *Stiles v. Willis,* 66 Md. 552; *Wollam v. Hearne,* 2 Lead. Cas. Eq. 924.

*P. H. Winston,* Attorney General, *T. M. Vance* and *A. R. Titlow,* for the State.

The opinion of the court was delivered by

FULLERTON, J.—The act of March 26, 1890 (Session Laws 1889-90, p. 269), establishing the Washington Soldiers' Home, provided, among other things, for the appointment of a board of five trustees, made it a part of their duty to select the site on which the home should be erected, and empowered them to purchase, or accept a donation of, a suitable tract of land for that purpose.  The trustees appointed under this act, in the discharge of their duty, advertised for offers or propositions for a site, and among those received was one from the citizens of Orting,

in Pierce county. This proposition contained the offer of the choice of two distinct tracts, specifically described, one of which was owned by the appellant, E. A. Lorenz and his then wife, Anna C. Lorenz. Lorenz and wife at that time owned another tract, adjoining the land offered, on which was situated a large spring, the water from which it was necessary for the trustees to obtain in order to make the proffered site acceptable, or, in fact, of any value for the purpose for which it was designed to be used. The original proposition contained no reference to this spring. The trustees entered into negotiations with the citizens' committee, in which Lorenz and wife participated, ending finally in an agreement by the terms of which Lorenz and wife agreed to convey to the state of Washington, for the consideration of $10,000, the tract offered, together with the perpetual right to take from the spring so much of the water thereof as would flow through a three inch pipe, and the right to lay and maintain a three inch pipe from the spring to the lands, conveyed across the lands retained by Lorenz and wife, over such route as the trustees might select. The consideration was paid Lorenz and wife by the citizens of Orting, and deeds were prepared purporting to convey the property to the state of Washington, which were submitted to the attorney general, approved by him, and duly accepted by the trustees. The trustees took possession of the land conveyed in the latter part of the year 1890, proceeded immediately to erect suitable buildings thereon, and laid from the spring to the buildings a three inch water pipe, and used the water of the spring uninterruptedly from that time until shortly prior to the commencement of this action. The deed purporting to convey the water right was as follows:

"This indenture, made this 15th day of December, 1890, by and between Edward A. Lorenz, of Pierce county, Washington, and Anna C., his wife, parties of the

county, Washington, and Anna C., his wife, parties of the first part, and the State of Washington, party of the second part,

"Witnesseth: That said parties of the first part, for and in consideration of the sum of one dollar, lawful money of the United States, and other valuable considerations to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said party of the second part, and its assigns, the right to lay and construct a pipe, not to exceed three inches in diameter, through and across the following described lands and premises, situated in the county of Pierce and state of Washington, upon such line as may be determined upon by the authorized agents of said second party, for the purpose of conducting water to and supplying the ground donated for the Soldiers' Home in said county, to-wit:

"Through and across the west half of the northeast quarter of section six (6), township eighteen (18) north, range five (5), E. W. M.

"And the said second party shall have the right, by its authorized agents, to enter the premises hereinbefore described, for the purpose of laying and constructing the said water pipe or main, and at any time thereafter for the purpose of keeping the same in repair, doing no more damage by such entry than may be necessary for the purpose of repairing said water pipe; hereby granting and conveying to said second party the right to maintain the said water pipe and keep the same in repair forever.

"In witness whereof we have hereunto set our hands and seals this 15th day of December, A. D. 1890." (Properly signed and acknowledged.)

On April 20, 1898, E. A. Lorenz served a written notice upon the commander of the home, notifying him, in effect, that from and after May 1, 1898, he would have use of the waters of the spring in irrigating his hop fields, and shortly after the date named in the notice proceeded to take possession of the water. The state thereupon brought this action to enjoin Lorenz from interfering with the waters

of the spring, and to reform the deed so as to make it conform to what it contends to be the real agreement of the parties. The trial resulted in a judgment in favor of the state.

The refusal of the trial court to strike out certain allegations of the complaint as irrelevant and redundant matter, constitutes the first error assigned. The point made cannot avail the appellants. By the statute (§ 6535, Ballinger's Code), "The supreme court shall hear and determine all causes removed thereto . . . upon the merits thereof, disregarding all technicalities, and shall upon the hearing consider all amendments which could have been made as made," and may review an intermediate order or determination of the trial court only when it involves the merits of the controversy, or materially affects the judgment (§ 6520, *Id.*). It is not shown that the error complained of here in any way involved the merits of the controversy, or materially affected the judgment rendered, or that it was other than merely technical error, if error at all. Error without prejudice is not a ground for reversing the judgment of a trial court in an equity cause.

It is next urged that the court erred in refusing to sustain the demurrer to the complaint. The demurrer was based upon the grounds, (1) that there is a defect of parties defendant, and (2) that the complaint does not state facts sufficient to constitute a cause of action. In explanation of the first ground of demurrer it is necessary to state that the amended complaint, at the time the demurrer was filed, alleged the execution of the deeds above referred to by E. A. Lorenz and Anna C. Lorenz, his wife, but did not name the wife as a party to the action in the title of the complaint, or recite any fact which would relieve or excuse the necessity of making her a party, other than the allegation contained in the sixth clause; namely, "that plaintiff is informed and believes, and so alleges the fact to be, that

the defendant, Anna Lorenz, is a minor, being under the age of eighteen years, and is the minor heir and child of the defendant, E. A. Lorenz and Anna C. Lorenz, deceased." But whether this is sufficient as an allegation of the death of Anna C. Lorenz it is not necessary here to determine. When the trial court's attention was called to this objection, he allowed the plaintiff to further amend by alleging directly the death of Anna C. Lorenz subsequent to the execution of the deed and prior to the commencement of the action. Under the Code the trial court may allow pleadings to be amended at any stage of the proceedings, and its action in that regard will only be reviewed when an abuse of discretion is shown. An examination of the present record convinces us that the action of the trial court, so far from amounting to an abuse of discretion, would have been an abuse of discretion had he denied to the respondent the privilege of amending.

The second ground of demurrer is equally without support in the record. In a suit to reform a written instrument a complaint is sufficient which shows the original agreement of the parties; points out where the writing differs from the agreement, and alleges that the difference was caused by the mutual mistake of the parties to the agreement. The pleader in the present case was thus specific, and the complaint is not fatally defective because it does not purport to set out the exact language omitted from the written instrument.

It is next contended that the right to reform the deed is barred by the statute of limitations, and the case of *Exkorn v. Exkorn,* 37 N. Y. Supp. 68, is cited in support of the contention. That was an action brought to reform a referee's deed by inserting the plaintiff's name as co-grantee with the defendant. The deed was delivered July, 1877, and the action was commenced in August, 1894. The defendant plead the ten years' statute of limitations

(Code Civ. Proc., § 388), which is equivalent to § 4805 of our statute (Ballinger's Code). The court held the statute applicable, and that the running of the statute did not depend upon the discovery of the mistake, but ran from the date of the deed. The case does not, however, seem to be in accord with the subsequent case of *De Forest v. Walters,* 153 N. Y. 229 (47 N. E. 294), decided by the court of appeals of that state. The latter case was an action of ejectment, in which the plaintiff sought to recover the possession of a parcel of land claimed by the town of Huntington. The town pleaded as an affirmative defense that the plaintiff claimed title, and the right to possession, under and by virtue of a deed from the town to the plaintiff's ancestor, executed November 19, 1870, and that by mistake on the part of the grantor in the deed, and fraud on the part of the grantee, the lands intended to be conveyed were so described as to make it appear that the conveyance embraced the land in controversy. It prayed that the deed be reformed so that the description should plainly embrace only the lands actually sold the grantee and intended to be conveyed, which were described in general terms in the answer. The plaintiff, in reply to the claim for a reformation of the deed, pleaded the ten years' statute of limitations. The trial court treated the affirmative defense as a complaint to remove a cloud upon title, and as containing all the elements necessary to warrant that form of relief, and entered judgment for the defendant. The appellate court held that, inasmuch as there was no point made at the trial as to the form of the pleading, nor any questions raised, by demurrer or otherwise, with respect to the sufficiency of the answer as a basis of the relief demanded, save the lapse of time, it was immaterial whether the affirmative defense be treated as a complaint to remove a cloud upon title, or a suit to reform a deed, as

in either event it was not barred by the statute of limitations; In the course of its opinion the court said:

"Moreover, there is, we think, another answer to the plaintiff's contention that the statute had run against the right of the defendants to the relief demanded in the counterclaim. The plaintiff is attempting to assert title through a deed which it is alleged by the defendants is inoperative by reason of a mistake in describing the land conveyed. The defendants set up these facts as a defense and as a basis for reforming the defective deed. The plaintiff's action of ejectment furnishes the occasion for the interposition of these claims by the defendants. In such an action, and under such circumstances, it has been held that the statute of limitations, if applicable at all, does not begin to run till the party against whom it is invoked is charged with knowledge of an assertion of some adverse claim under the deed;"—citing, *Bartlett v. Judd,* 21 N. Y. 200; *Reitz v. Reitz,* 80 N. Y. 538; *Sprague v. Cochran,* 144 N. Y. 104 (38 N. E. 1000).

It may be that the courts of that state, in applying the statute of limitations, make a distinction between the case where a party out of possession of real property and claiming an interest therein brings a suit for specific relief, which involves a reformation of a deed on the ground of mutual mistake, and the case where one in possession of real property seeks to reform a deed on that ground as a defense of his possession against the assertion of an adverse legal claim; holding that the statute begins to run against the right of the former from the date of the deed sought to be reformed, and against the latter from the time of the attempted assertion of the adverse claim. But whether or not these cases can be distinguished on this principle, we do not feel inclined to follow the case of *Exkorn v. Exkorn* in so far as to hold it applicable to a state of facts such as the case in hand presents. The respondent, by virtue of the agreement and the consideration

paid, became the equitable owner of the property in controversy. At the time of the attempted assertion of the adverse claim, it was in possession of the property, and for more than eight years had held such possession, holding without knowledge that any one asserted a claim adverse to its title. Under such circumstances it would be a perversion of the statute of limitations to hold that the statute had barred its right to defend its title and possession against a naked legal claim as inequitable as the one presented by the appellants. "The statute of limitations is to be employed as a shield, and not as a sword; as a means of defense, and not as a weapon of attack." We conclude, therefore, that the statute did not begin to run against the right of respondent to reform the deed until the assertion on the part of appellants of their adverse claim. *Bartlett v. Judd,* 21 N. Y. 200 (78 Am. Dec. 131); *Varick v. Edwards,* 11 Paige, 290; *Citizens' National Bank v. Judy,* 146 Ind. 322 (43 N. E. 259); *Harris v. Ivey,* 114 Ala. 363 (21 South. 422).

Neither do we think the officers of the state were guilty of such culpable negligence as to bar the right to have a reformation of the deed. By the act creating the Washington Soldiers' Home the duty of passing upon the sufficiency of the deed was placed upon the attorney general of the state. This deed, it appears, was drawn by a conveyancer employed by the Lorenzs' and forwarded to the attorney general for his approval, and it is not made to appear that the attorney general had accurate information as to what the deed was intended to convey. As to its formal parts, and to everything that appeared on the face of the instrument, it was certainly sufficient; and it was not culpable negligence on the part of that state officer not to inquire whether everything was included within the description that was intended to be conveyed. But, even conceding that the attorney general did know what the deed

was intended to convey, and decided that the deed. was legally sufficient for that purpose, it would not be such a mistake of law as equity will not relieve against. On the contrary, in the language of Mr. Justice CLIFFORD in *Walden v. Skinner,* 101 U. S. 577:

"Decisions of undoubted authority hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his engagement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties."

See further: *Park Bros. & Co. v. Blodgett & C. Co.,* 64 Conn. 28 (29 Atl. 133); *Benson v. Markoe,* 37 Minn. 30 (33 N. W. 38); *Allen v. Elder,* 76 Ga. 674 (2 Am. St. Rep. 63); *Reed v. Root,* 59 Iowa, 359 (13 N. W. 323); *Larkins v. Biddle,* 21 Ala. 252.

The proofs are clear and convincing that the deed was the result of a mutual mistake of the parties, and we must decline to enter into a discussion of them here.

The question as to costs is concluded against the claim of appellants by the case of *Carlson Bros. & Co. v. Van De Vanter,* 19 Wash. 32 (52 Pac. 323).

No substantial error appearing in the record, the judgment of the lower court is affirmed.

GORDON, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.