J. T. HAZARD, *Appellant*, v. FRANK S. WARNER, *Respondent*.[1]

REFORMATION OF INSTRUMENTS (5, 20)—GROUNDS—MISTAKE OF FACT—EVIDENCE—SUFFICIENCY. Where there was an oral agreement to purchase all of the seller's hay, both first and second cuttings, the total tonnage of which was not known, the sellers are entitled to a reformation of written contracts of the buyer offering to buy "250 about tons," on the ground that the contracts through mistake did not express the intent of the parties, unless the word "about" be construed to include the entire crop.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered January 17, 1922, upon findings in favor of the defendant, in an action to reform and recover on contracts of sale, tried to the court. Reversed.

*C. A. Norton,* for appellant.

*Rigg & Venables,* for respondent.

TOLMAN, J.—A single question of law is presented by this appeal. Three witnesses testified on behalf of the appellant to the effect that appellant and his

[1]Reported in 211 Pac. 732.

assignors were the owners of the alfalfa hay being produced upon a certain tract of land; that respondent, a dealer in hay, approached them and proposed to buy the entire first and second cuttings, and that neither party was certain as to what, in tons, the two cuttings would amount to. The owners of the hay were willing to sell the whole thereof only, and the purchaser orally agreed to take the whole product of the two cuttings. Thereupon the dealer prepared, signed, and procured the owners of the hay to sign contracts in the following form:

*Mr. C. E. Pigott,*                           6/21 1920
  *Harrah, Wash.*

We offer to purchase from you at the price of $24.00 per ton 250 *about* tons of alf hay to be loaded by you f.o.b. cars basis *Harrah,* Washington, and to be shipped to points in the State designated by us, *1st and 2nd* cutting, the quality is to be Number One at *Harrah.* Off grade goods handled at shipper's account. Delivery to be made by you as follows: *Delivery on or before Oct. 1st.*

                                   F. S. WARNER
                                   By W. W. W.

I hereby accept the foregoing offer and acknowledge receipt of $1,000.00 as advance payment thereon.      C. E. Pigott.

*Mr. Hazard and Purnell,*                  June 22, 1920
  *Harrah, Wash.*

We hereby offer to purchase from you at the price of $24.00 per ton 250 *about* tons of alf hay, to be loaded by you f.o.b. cars basis *Harrah,* Washington, and to be shipped to points in the State designated by us, *1st and 2nd* cutting, the quality is to be Number One at *Harrah.* Off grade goods handled at shipper's account. Delivery to be made by you as follows: *Delivery on or before Oct. 1st, 1920.*

                                   F. S. WARNER
                                   By W. W. W.

I hereby accept the foregoing offer and acknowledge receipt of $1,500.00 as advance payment thereon.      J. T. Hazard

Dated this 22 day of *June, 1920.*        H. Purnell.

These contracts were upon printed forms and the words and figures italicized only were written in by the purchaser at the time they were executed. Respondent's only witness, the agent who made the con-

tract, does not in terms deny that the conversations were as testified to by appellant's witnesses, but does give his version of those conversations as follows:

"A. I went over to Mr. Pigott and asked to buy his hay, he thought around about it awhile, and said he would sell, we talked there, and I said, 'How many tons have you got?' He said, 'Five or six hundred tons, somewhere in that neighborhood.' We walked back to the corner, and I said, 'I want something definite,' and he said, 'I will sell two hundred fifty tons,' and I advanced a thousand dollars on that;" and

"Q. The other contract you made with Mr. Hazard and Mr. Purnell?

"A. The same day I think we talked it over, they said they didn't know whether the price was right. I said, 'It's up to you fellows to decide. I would like to handle it, but it's up to you fellows to decide whether you want to sell.' They said to come back tomorrow. so I went back the following day and took Mr. Pigott's copy of the contract and showed it to Mr. Hazard and Mr. Purnell. It was out in the road, right in front of their place, and they came over there and they talked a few minutes, they was rather busy stacking hay, and they talked it over a few minutes and decided to sell. They spoke about how much they had, and I said, 'I don't know, I haven't been over your property, I haven't been all over your place, I don't know how much. You sign the same as Mr. Pigott,' so I wrote an exact duplicate, the same as Mr. Pigott's."

Respondent accepted and paid for five hundred tons only under these contracts, and it is admitted that there was produced from the first and second cuttings referred to an additional fifty-seven tons of number one alfalfa hay, delivery of which was tendered and refused. The price of hay fell, and the sellers disposed of these fifty-seven tons at the best price obtainable, which was seven dollars per ton less than the price named in the contracts. The other parties interested having assigned their claims to appellant, he brought

this action seeking to have the contracts reformed so as to express the true intent of the parties, and to recover thereon the loss of $399. From a judgment denying the reformation and recovery, this appeal is prosecuted.

Many authorities are cited pro and con upon the question here presented, and while not greatly differing in principle, the application so differs as to result in hopeless confusion, and render a review of the authorities wholly valueless. The generally accepted modern rule is well stated in 23 R. C. L. at page 326, as follows:

"Many well considered modern cases show a strong tendency to adopt the position that the main object of equitable jurisdiction should be to effectuate the intentions of the parties to the instrument in question, and that any mistake made by them which would defeat such intentions should be corrected in equity for the purpose of putting into effect such intentions, whether the mistake in question be one of law or of fact. And this is so although the parties knew what words were employed and their ordinary meaning."

We have recently considered this question in *Hendrickson v. Lyons,* 121 Wash. 632, 219 Pac. 1095, where it is said:

"It is undoubtedly a general rule that equity will not grant relief against mistakes of law, but the rule, like many others, has its exceptions, and we are clear that the case here is within an exception. As was said by the supreme court of the United States in *Hunt v. Rousmaniere,* 1 Pet. (U. S.) 1:

" 'When an instrument is drawn and executed, which professes, or is intended, to carry into execution an agreement, whether in writing or by parol, previously entered into; but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates, the manifest intention of the parties to the agreement, equity will correct the mistake, so as to

produce a conformity of the instrument to the agreement.'

"In *Oliver v. Mutual Commercial Marine Ins. Co.*, 2 Curt. (U. S.) 277, it was said:

" 'There is a wide distinction between a case where an instrument is, what the parties agreed, it should be, but its legal effect is unexpected, and a case where an instrument was designed to carry into effect an existing binding agreement, but, by mistake fails to do so. In the former case the party never had a right to anything more than he has got. He may be disappointed in finding that what he acquired was less valuable than he expected, but he acquired all he bargained for, and there is no ground upon which a Court of Equity can give him anything more. On the contrary, in the latter case, the party had a complete right, by an existing contract, to something which, by mistake, he has failed to get. And this contract, and the right under it, still subsists, in point of equity; because, though the parties attempted to execute the contract, by mistake, they failed to execute it; and therefore, a Court of Equity interposes, and upon the footing of an existing contract, unexecuted, proceeds to put the party in that condition to which his contract entitles him. And in this class of cases I apprehend it is wholly immaterial whether the party failed to obtain that to which he was entitled through a mistake of fact or of law.'

"Later cases from the supreme court of the United States maintain the same doctrine (see *Waldon v. Skinner*, 101 U.. S. 577), and our own cases of *Dennis v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210; *State v. Lorenz*, 22 Wash. 289, 60 Pac. 644, and *Murray v. Sanderson*, 62 Wash. 477, 114 Pac. 424, are to the same effect, although the precise question suggested was not discussed in the opinions. Indeed, it seems to be the almost universal current of authority that mistakes of this sort will be relieved from in equity, whether they be strictly mistakes of law or mistakes mixed of law and fact."

Let us apply, if we can, these principles to the facts now before us. If the evidence of appellant's three

witnesses is to be accepted as true, and we see no escape from that course, as it preponderates three to one, and is denied but inferentially by the one, then an oral agreement was first arrived at for the sale and purchase of the entire first and second cuttings grown by the sellers, and the writing thereafter prepared by the purchaser did not follow and correctly state the oral agreement, unless the word ''about'' be considered to mean, in effect, the sellers' entire crop. If the word ''about'' be not so construed, then the written contracts violate the manifest intention of the parties and the sellers are denied a right which was theirs by reason of the then preexisting oral contract, and which ''still subsists in point of equity; because, though the parties attempted to execute the contract, by mistake, they failed to execute it.''

It should be said in justice to the trial judge that his judgment was entered in this case prior to the decision by this court in *Hendrickson v. Lyons, supra,* and that he followed, apparently, the case of *Peterson v. Chaix,* 5 Cal. App. 525, 90 Pac. 948. The facts in that case are strangely similar to the facts here involved, except that in that case there was ''no allegation or proof of mistake, or invalidity of the contract, or of fraud,'' while here there is both allegation and proof abundant of mistake, and if it be said that the mistake was not mutual, then the action of the purchaser in concealing his intent to limit the oral agreement might well be held to constitute fraud.

For the reasons given, the judgment is reversed, with directions to enter judgment in favor of appellants for $399, with legal interest thereon from the time the cause of action accrued.

PARKER, C. J., FULLERTON, and MAIN, JJ., concur.