[No. 22424. Department Two. January 7, 1931.]

Z SYSTEM CONSTRUCTION, INCORPORATED, *et al., Respondents,* v. QUEEN CITY IMPROVEMENT COMPANY, INCORPORATED, *Appellant.*[1]

*Kerr, McCord & Ivey,* for appellant.

*Stratton & Kane* and *Elmer W. Leader,* for respondents.

BEALS, J.—Plaintiff, Z System Construction, Inc., is the owner by assignment of a patent issued to one

[1]Reported in 294 Pac. 1003.

M. Don East, covering a method of construction of overlapping floors intended for use in garages. During the month of November, 1927, this plaintiff (which will be herein referred to as Z System) granted to plaintiff V. O. Boone the right for the ensuing five years to sell licenses authorizing the use of the Z System of construction covered by the patent by persons desiring to use the same, the payments received from the licensees to be divided between Z System and Mr. Boone.

During the month of January, 1928, defendant Queen City Improvement Company, Inc., commenced the erection of a garage on Fifth avenue in the city of Seattle, which building was completed during the month of May following. The garage consists of six stories, containing thirteen levels, and the Z System of overlapping floors was installed therein. This method of construction was employed pursuant to oral negotiations between plaintiffs and defendant, and the Z System trademark was regularly stamped upon the plans prepared for the building.

Plaintiffs brought this action while the building was in course of erection, alleging that the garage was being constructed under an oral license authorizing the use of the Z System, which license was given upon the promise of defendant that it would pay therefor the sum of eight cents for each square foot of floor space in the building devoted to garage and other specified purposes, and that the total sum due plaintiffs from defendant amounted to approximately $5,400, for which amount plaintiffs prayed for judgment.

Defendant answered, admitting an oral agreement between itself and plaintiffs, under which defendant would use in its proposed building the Z System of construction, for the use of which plaintiffs were to be compensated in accordance with defendant's contention concerning the contract between the parties. By

way of affirmative defense, defendant alleged that, during the month of October, 1927, plaintiffs entered upon negotiations with defendant for the purchase by defendant of the right to use the Z System in the construction of its garage; that at that time it was known by all parties concerned that Ramp Building Corporation, of New York, claimed to own a patent covering the method of construction of overlapping floors for garages which defendant desired to use, and was asserting that its patent was being infringed by persons using the Z System of construction; that defendant refused to make any agreement with plaintiffs whereby defendant would pay to plaintiffs royalties for the use of the Z System unless and until plaintiffs would procure and furnish to defendant a decree of a court of competent jurisdiction adjudging as between plaintiffs and the Ramp company that plaintiffs were entitled to the royalties.

Defendant further alleged that it was agreed between plaintiffs and defendant that the construction of the building should proceed according to plan, and that no payments should be made to plaintiffs until the procurement of such a judicial decree; that the Ramp company was claiming royalties from defendant; and that no decree of any court had been furnished defendant showing any adjudication of the respective rights of the two claimants. The action was tried to the court sitting without a jury, and resulted in a judgment in plaintiff's favor, from which defendant appeals.

Finding No. 5 made by the trial court, and exhibit "A" therein referred to (being the same exhibit attached to the judgment), read as follows:

"That the defendant Queen City Improvement Co. on or about January 18, 1928, commenced the construction of a certain garage building on the west side of

Fifth avenue, between Stewart and Virginia streets, in the city of Seattle, King county, Washington, the same being at location numbered 1913-15-17 Fifth avenue, and continued the construction of said garage building and completed the same on or about the 15th day of May, 1928; that said building is six stories high, with thirteen levels; that in the construction of said building the said Z System Construction as covered by said letters patent was used and is being used and the system of over-lapping floors covered by said letters patent has been and is being used in said building; that said building was constructed according to plans for the construction of garage in which the said Z System of construction is used, and the said trademark was stamped upon all of such plans, and said plans were approved by the plaintiff corporation; that after the commencement of the construction of said building and prior to its completion, and while the same was in course of construction, the said plaintiffs upon the one part and the defendant upon the other part made and entered into a certain oral agreement on the 2nd day of February, 1928, which was reduced to writing but was never signed, which agreement is set forth in Exhibit 'A' hereto attached and made a part of these findings; that under and by virtue of said agreement the said defendant became indebted to the plaintiff, Z System Construction Inc. in the sum of $5408, the same being eight cents a square foot for 67,600 square feet of floor space, for which the said defendant should pay at the rate of eight cents per square foot; that no part of said sum has ever been paid and that there is due and owing and unpaid to the plaintiff Z System Construction Inc. the said sum of $5408, together with the sum of $486.70 interest, aggregating in all $5894.70, in which sum the plaintiff Z System Construction Inc. is entitled to judgment against the defendant, together with plaintiff's costs and disbursements herein.''

''Exhibit 'A'

''Agreement

''This Agreement, made and entered into this day by and between Queen City Improvement Co. Inc. as

first party, V. O. Boone as second party, and Z System Construction Inc. as third party:

"WITNESSETH:

"That WHEREAS, a certain license agreement between V. O. Boone, as licensor and Queen City Improvement Co. Inc. as licensee, was made and entered into in writing and dated the 2nd day of February, 1928, to which reference is here made; and

"WHEREAS, under said license agreement certain moneys are payable to V. O. Boone as royalty for the use of the Z System in buildings mentioned in said license agreement; and

"WHEREAS, a certain concern known as the Ramp Buildings Corporation claims that the use of said Z System in any garage or other building, is an infringement upon certain patents claimed to be owned by the said Ramp Building Corporation; and

"WHEREAS, the Queen City Improvement Co. Inc. is unwilling to pay to said Boone the royalties provided for in said license agreement except under conditions satisfactory to it for its protection against any claim of the Ramp Buildings Corporation to the royalties payable by it to the said Boone under said license agreement;

"Now THEREFORE, IT IS AGREED:

"(1) This agreement shall be considered supplemental to and as a part of the said license agreement above referred to between the Queen City Improvement Co. Inc. and the said Boone, and they shall be construed together as one contract.

"(2) Payments under said license agreement shall be paid to Z System Construction Inc., instead of to said Boone, and contemporaneously with the receipt of payments made it by the Queen City Improvement Co. Inc. hereunder, said Z System Construction, Inc. agrees to deposit each such payment in the National Bank of Commerce, Seattle, with instructions to the bank to retain such money in its possession until such time as it shall be established by final decree of a court of competent jurisdiction that the said Ramp Buildings Corporation is not entitled to the said moneys or until the said Z System Construction, Inc. and the said

Boone have otherwise satisfied the said Queen City Improvement Co. Inc. that the said Ramp Buildings Corporation is not entitled to the said money, or any part thereof.

"If and when the final decree of such court has been entered, adjudging that said Ramp Buildings Corporation is not entitled to any of said moneys so deposited with the bank, and a certified copy thereof filed with said bank, or if and when the said Queen City Improvement Co. Inc. files with said bank its written consent that said moneys so deposited may be paid over to said Boone, then the said bank is authorized and directed to pay from said moneys, after deducting its charges, forty per cent (40%) thereof to the Z System Construction, Inc. and the remaining sixty per cent (60%) thereof to the said Boone. Any interest payable by said bank on account of the deposit of said money shall be distributed forty per cent (40%) thereof to said Z System Construction, Inc. and sixty per cent (60%) thereof to the said Boone.

"(3) The said Z System Construction, Inc. and the said Boone agree to save harmless and indemnify the said Queen City Improvement Co. Inc. against any loss and or expense arising out of any litigation relating to the said moneys or any claims of the Ramp Buildings Corporation thereto.

"Dated this 2nd day of February 1928.

"QUEEN CITY IMPROVEMENT CO., INC.

"ATTEST:      By....................................President.

*Secretary*

*Second Party*

"Z SYSTEM CONSTRUCTION, INC.

"ATTEST:      By....................................President

*Secretary*      *Third Party;"*

and in accordance therewith the judgment contains the following provision:

"It is further ordered, adjudged and decreed that contemporaneously with the receipt of said sum of $5,894.70 the said Z System Construction, Inc. deposit

the same to its own credit in the National Bank of Commerce, Seattle, Washington, together with a copy of Exhibit 'A' hereto attached, and that said bank retain said money until it pays the same in accordance with the terms of said Exhibit 'A'."

Appellant admits that it should pay someone for the privilege of using the type of overlapping floors constructed in the garage, and it apparently does not object to the amount which the court adjudged it should pay by way of royalty. It does, however, strenuously assert that the court erred in making finding No. 5, above quoted, and in rendering judgment in respondents' favor, contending that the unsigned agreement hereinabove set forth is not binding upon appellant for two reasons: First, because respondents and appellant had agreed that appellant should be fully protected against all claims on the part of the Ramp company (appellant contending that the agreement which the court found the parties made does not give appellant such protection); and second, that it was understood that the agreement would not be effective until signed, it being admitted that the parties never did attach their signatures thereto or formally execute the same.

Appellant, in the first place, relies upon the doctrine laid down in 6 R. C. L., page 630, § 47, referring to mistakes as to the legal effect of contracts, the portion of the section particularly relied upon by appellant reading as follows:

"It has been said that in order to establish mistake in an instrument, it is sufficient to show that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effect the object."

Appellant contends that it had been orally agreed between the parties that it should be fully protected against any claim on the part of the Ramp company,

and that, as the unsigned document above set forth does not give appellant such complete protection, it must be held that the same does not carry out the object which the parties sought thereby to accomplish, and that therefore appellant should not be held to the terms thereof. In support of its contention that it was the understanding of the parties that appellant was to have full protection, appellant relies upon the following testimony of respondent Boone:

"Q. Do you recall this, that I (attorney for Queen City) told you that before we could go ahead with your patent—with your scheme—that we would have to have ample protection against the Ramp people? Do you remember that? A. Yes. Q. I told you that, did I? A. Yes."

It appears that the unsigned memorandum, which the court found was binding upon the parties, was dictated by respondents' counsel in his office February 2, 1928, and respondent Boone testified as follows concerning the preparation of this document:

"We were all there to reach an agreement whereby the Queen City could get a license to use the Z System and the Z System would get a royalty contract, and the Queen City wanted protection so that they would not have to pay double royalty, and this agreement was agreed upon as being satisfactory to them, after considerable discussion. And when everybody agreed to it, you called in your stenographer and dictated this agreement, and asked if that satisfied everybody concerned. And we all went away thinking an agreement had been reached."

Respondents' attorney, who dictated the agreement, testified as follows:

"Mr. Stoddard stated at that time that the Queen City was perfectly willing to pay the royalty of fifty-four hundred dollars, or eight cents a square foot, but that he didn't want to pay it and then pay it over again, and he wanted some arrangements made that

would be satisfactory to all concerned. I told him I had been instructed by the Z System to start suit unless some satisfactory arrangements were made then, because East was after me to bring this suit, and I suggested that we enter into an agreement, which is set out in this defendant's Exhibit 1, and I considered that that would be the protection which the Queen City wanted.''

The record contains other testimony concerning the same matter, all of which we have carefully studied.

The question of whether or not the unsigned agreement, above referred to, embodies the contract between the parties is, of course, a question of fact to be determined from the testimony. It appears beyond question that the Ramp company was making some claim that money was due it because of the use by appellant of the overlapping floor plan used in the construction of its building. Whether or not such claim on the part of the Ramp company was well founded is immaterial here, the only matter of importance in connection therewith being that the claim was in fact made.

It is evident that the parties hereto expected to enter into some agreement, after the commencement of the construction of appellant's garage, concerning the payment of royalties by appellant. Appellant does not contend that the parties ever agreed upon any precise form of words as embodying the contract between them, but argues that it appears from the evidence that the parties had agreed upon the basic proposition that some contract would be entered into under which appellant would have full and complete protection against any and all possible claims on the part of the Ramp company based upon its patent. The parties to this action had discussed the situation at length, and it appears from the testimony that a license agreement had been prepared, although the same was never executed and delivered.

In support of its contention, appellant cites several opinions of this court, commencing with that of *State v. Lorenz,* 22 Wash. 289, 60 Pac. 644. In the course of its opinion, this court quotes with approval the following language from the opinion of the supreme court of the United States in the case of *Walden v. Skinner,* 101 U. S. 577:

"Decisions of undoubted authority hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his engagement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties."

In a note by the editors of American Law Reports, Annotated, following the case of *Lamson v. Horton-Holden Hotel Co.,* 193 Iowa 355, 185 N. W. 472, 26 A. L. R. 465, the note being found at page 484, authorities are cited to the effect that, where persons have entered into an oral agreement and made a mutual mistake of law in reducing their agreement to writing, so that the written instrument does not follow or accurately express the agreement or intention of the parties, a court of equity has power to reform the written instru-

ment so as to make it express the true contract. The authorities cited undoubtedly lay down a correct principle of law.

The trouble with appellant's position is that we are unable to determine from the testimony just what the original agreement between the parties to this action was, or that appellant's contention concerning the same is in fact well founded. The evidence relied upon by appellant is not sufficiently definite to enable us to determine exactly what measure of protection appellant was to have against possible claims on the part of the Ramp company, or how that protection was to be afforded. One of the principal officers of appellant corporation died not long before the trial, and his testimony as to the original agreement between the parties was therefore not available. It is perfectly clear that respondents expected to enter into an agreement with appellant whereby appellant should have some measure of protection against claims on the part of the Ramp company; this respondents admit. After careful consideration, however, we cannot but agree with the trial court in its finding to the effect that the parties did thereafter agree between themselves as to what should be done in this particular, and that the agreement is embodied in the unsigned memorandum dictated by respondents' counsel.

Appellant cites the recent case of *Woods v. Desmond,* 156 Wash. 359, 286 Pac. 856, in which this court affirmed a decree of the trial court reforming a release which had been executed and delivered by one party and accepted by the other prior to the institution of the action. The trial court found that the release did not embody the actual agreement between the parties, and reformed the same. This involved a finding upon a question of fact, and this court, being of the opinion that the superior court had ruled correctly upon the

matter, affirmed the decree reforming the instrument. The case cited is authority for the proposition that in the case at bar the trial court should have decided in appellant's favor *if* it believed that the evidence required such a ruling, but, as above stated, we agree with the trial court that the evidence in this case neither requires nor supports such a determination of this action.

Appellant argues that the unsigned memorandum hereinabove set forth does not give appellant any protection at all, and therefore fails completely to carry out the object which the parties sought thereby to accomplish. We cannot agree with appellant's contention. The agreement does undoubtedly give appellant some measure of protection. Whether or not appellant is thereby adequately guarded against all possible methods of attack on the part of the Ramp company need not be here determined. We agree with the trial court in finding that the parties did agree between themselves in terms as expressed in the unsigned memorandum.

Appellant argues that it appears from the testimony that it was contemplated by the parties that this memorandum was to be formally signed, and that as the same was not signed it is ineffective for any purpose. In support of this proposition, appellant cites several opinions of this court. It is, of course, true that, when persons who are proposing to enter into a contract, one with the other, dictate to a stenographer, or draft, a tentative form of agreement, intending that the same shall be reduced to writing and formally executed at some later date, the contract between the parties is not complete until the contract is signed and delivered.

In the case at bar, witnesses on behalf of respondents testified that the parties orally agreed between

themselves, and that the oral agreement was dictated to a stenographer so that it might thereafter be reduced to writing, in order that the parties might be mutually protected against a lapse of memory on the part of any of them as to what had been actually agreed upon. We are of the opinion that it clearly appears from the testimony that, prior to the time this memorandum was dictated, respondents had been insisting that something be done to protect them as to royalties which they claimed on account of the construction of appellant's building. It is perfectly reasonable to suppose that the parties did agree as to what should be done in regard to this matter. We are not in accord with appellant's contention that appellant is not bound by the terms expressed in the unsigned memorandum. Whether or not appellant might have been better or more fully protected by some other and different contract is immaterial.

Careful examination of the record convinces us that the judgment entered by the trial court was correct, and the same is accordingly affirmed.

MITCHELL, C. J., FULLERTON, MILLARD, and PARKER, JJ., concur.