[No. 35643.    Department Two.    February 1, 1962.]

# W. A. GAMMEL, *Appellant*, v. ALOIS DIETHELM *et al.*, *Respondents.**

* Reported in 368 P. (2d) 718.

*Livesey, Kingsbury & Livesey,* by *George Livesey, Jr.,* for appellant.

*Russell Millhouse,* for respondents.

HILL, J.—This is an appeal from a judgment reforming a contract to purchase real and personal property.

The purchasers paid the seller $1,000 for an option to purchase certain real and personal property (a dairy farm) for $29,000, with a down payment of $5,000 (to include the $1,000 paid for the option); the purchasers to assume a mortgage of not to exceed $12,000; the balance of the purchase price, over and above the mortgage, to be paid in

". . . monthly installments of $100.00, or more per month, including interest thereon at the rate of 5% per annum."

There was, at that time, an existing mortgage with an unpaid balance of approximately $5,000. The seller anticipated getting a new mortgage in the sum of $12,000 to replace the existing mortgage, thus increasing the cash immediately available to him. (The amount of the mortgage was no concern of the purchasers so long as it did not exceed $12,000 and was within certain other limitations as to terms, as prescribed in the option.)

The option was exercised, and the down payment of $5,000 made. The seller had not been able to secure the new mortgage, which he had expected to place on the property; and the purchasers, by the contract, assumed the unpaid balance of the existing mortgage, *i.e.,* $4,875. The contract, as drawn by the seller's attorney and pursuant to the seller's instruction, varied from the terms of the option in that it called for payments of "$100.00 per month plus accrued interest at the rate of Five (5%) per cent

per annum." The attorney had been instructed by the seller to make this change.

When the seller brought an action to forfeit the contract, because the purchasers refused to pay interest in addition to the monthly payments of $100, the purchasers answered and asked for a reformation of the contract to conform to the terms of the option. The reformation was granted.

The seller appeals.

We are again presented with a factual appeal; but with the necessity of going somewhat beyond the usual inquiry as to whether there is substantial evidence to sustain the findings of the trial court[1], as we are here required to ascertain whether that evidence is positive[2], clear, cogent, and convincing[3].

The trial court found, *inter alia*:

That the purchasers were foreign born; that they have reading and language handicaps, and are not too skilled in the economic world;

That the seller directed his attorney, who drafted the contract, to make the provision for payments of $100 per month plus interest, rather than the $100 a month including interest as called for in the option;

That the purchasers relied on the contract being drawn in accordance with the terms of the option and upon the honesty and integrity of the seller; and believed that the contract had been so written; that no mention of such change was made to the purchasers, and they had no reason to believe that such a change had been made; and they would not have entered into the contract, if the change had been known to them at that time; that there was no meeting of the minds on any such change.

The basis of the purchasers' case is an option, which is surely positive enough. It created a binding obligation on both parties: The seller, when he undertook to

---

[1]*Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183.

[2]*Schulz v. Spokane United Rys.* (1942), 16 Wn. (2d) 43, 132 P. (2d) 366.

[3]*Kaufmann v. Woodard* (1945), 24 Wn. (2d) 264, 163 P. (2d) 606.

have a contract drafted which was a fulfillment of his obligation under the option, had a duty to make it conform to the terms of the option, *Duprey v. Donahoe* (1958), 52 Wn. (2d) 129, 323 P. (2d) 903. The difference between the option and the contract is apparent. As was said in *Phillips v. Pitts* (1949), 33 Wn. (2d) 541, 544, 206 P. (2d) 275, where a deed was reformed because of an omission of a water right contained in the contract of purchase,

". . . The variance between the contract and the deed . . . is apparent and hence clear, cogent, and convincing."

That the purchasers had no reason to believe a change had been made; and would not have entered into the contract had they known of it, is established by testimony that the trial court found convincing, as do we.

■ These findings clearly bring the present case within our holdings as to the terms on which reformation will be granted. This is not a case of mutual mistake, but is a case of mistake on the part of the purchasers and inequitable conduct on the part of the seller.

In *Kaufmann v. Woodard* (1945), 24 Wn. (2d) 264, 163 P. (2d) 606, we said (p. 270):

"In order to entitle a party to a contract to a reformation thereof based upon mistake of fact there must have been either a mutual mistake of the parties, or a mistake on the part of the one entrusted with reducing the contract to writing (sometimes classed as a mutual mistake), or a mistake on the part of one party and fraud or inequitable conduct on the part of the other party. *John Hancock Mut. Life Ins. Co. v. Agnew*, 1 Wn. (2d) 165, 95 P. (2d) 386; *Chapman v. Milliken*, 136 Wash. 74, 239 Pac. 4; *Thompson v. Stack*, 21 Wn. (2d) 193, 150 P. (2d) 387; *Hazard v. Warner*, 122 Wash. 687, 211 Pac. 732, 31 A. L. R. 381; *Kelley v. Von Herberg*, 184 Wash. 165, 50 P. (2d) 23; 45 Am. Jur. 621, Reformation of Instruments, § 62. . . ."

We there said, concerning the facts of that particular case:

". . . We do not find any mutual mistake in the transaction between respondent and appellants, but we do find a mistake on the part of respondent and inequitable conduct on the part of appellants."

We can echo that statement in the present case.

The situation was much the same in *Phillips v. Pitts, supra,* though we there talked of "mutual mistake." It was not truly "mutual" as one party knew exactly what was in the deed and that it did not contain the reservation the other party believed it contained.

Corbin says:

"Reformation may be a proper remedy even though the mistake is not mutual. If one of the parties mistakenly believes that the writing is a correct integration of that to which he had expressed his assent and the other party knows that it is not, reformation may be decreed. The conduct of the other party in permitting the first to execute the erroneous writing and later attempting to enforce it may be regarded as fraudulent; but it is enough to justify reformation that he knows the terms proposed by the first party and the meaning thereof and leads that party reasonably to believe that he too assents to those terms. This makes a contract; and the writing may be reformed to accord with it. The fact that the first party was negligent in failing to observe that the writing does not express what he has assented to does not deprive him of this remedy. The ground for estoppel is against the other and non-mistaken party, not against the mistaken party even though he is negligent." (3 Corbin on Contracts, § 614, p. 730)

See, also, Restatement of Contracts, § 505, and 34 Wash. L. Rev. 529.

■ The seller contends that the purchasers made four payments of $100 plus interest over a period of a year, without question, when there was ample opportunity for them to protest; and that they have, in effect, ratified the contract as written. The evidence with reference to these four payments and the conditions then existing does not support that contention.

The first two payments so made were the first two to become due: May and June, 1958. The testimony of the purchaser, Lina Diethelm, was that some time prior to the time the first payment became due she discovered that the contract called for the payment of $100 plus interest, and that she made the payments not knowing what else to do. Thereafter the seller agreed to payments of interest

only while the purchasers were negotiating for a Farm Home Administration loan to refinance the contract; this moratorium continued from July, 1958, until February, 1959. Beginning with March, 1959, the seller refused to accept interest payments only; payments were then made in March and April of 1959, according to the terms of the contract, to avoid forfeiture while the purchasers continued their negotiations for the F.H.A. loan. One of these payments was made at the suggestion of the seller's attorney. Payments under such conditions are not, per se, a ratification. No payments were tendered thereafter, except the $100 a month the purchasers conceded to be due.

Payments made in accordance with the contract, together with the circumstances under which they were made, can be considered by the trial court as bearing upon the issue of whether the purchasers understood the contract they were signing; but such evidence does not, per se, establish that they understood the contract, nor does it prevent their testimony: That they never knowingly entered into a contract to make such payments, from being positive and convincing.

The evidence in the record is sufficient in character to meet all of the tests we have laid down relative to positiveness, clearness, cogency, and convincingness with reference to reformation.

The seller has failed to establish any ratification of the contract as drawn.

The judgment of the trial court is affirmed.

FINLEY, C. J., DONWORTH, OTT, and FOSTER, JJ., concur.